**DUKE POWER COMPANY, Plaintiff,**

v.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA,**
Defendant.

**Civ. A. No. 1021.**

United States District Court,
W. D. North Carolina,
Charlotte Division.

Jan. 17, 1955.

Robinson & Jones, W. B. McGuire, Jr., Charlotte, N. C., for plaintiff.

Carpenter & Webb, Charlotte, N. C., for defendant.

WARLICK, District Judge.

This action was instituted in the Superior Court of Mecklenburg County, and on petition was removed to this court on account of a diversity of citizenship, under Title 28 U.S.C.A. § 1332. It is an action in which plaintiff seeks to recover of the defendant the sum of $27,441.27, with interest, allegedly arising

from and under the terms of a policy of liability insurance issued by the defendant in favor of the plaintiff. This hearing arises under a motion made by plaintiff for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. The facts generally are not disputed.

### Findings of Fact

Plaintiff is a corporation organized under the laws of New Jersey and has its principal place of business in Charlotte, in Mecklenburg County, in the Western District of North Carolina. The defendant is a corporation organized under the laws of Pennsylvania with its principal business office in the City of Philadelphia.

Some time prior to October 1, 1952, plaintiff had begun the erection of a steam generating plant near Spencer in Rowan County, North Carolina, known as Buck Station, and in line with said construction entered into a written contract with Combustion Engineering-Superheater, Inc., with respect to its furnishing and installing two C–E Controlled Circulation Steam Generators. The contract between plaintiff and Combustion provided among other things that Combustion would furnish protective liability insurance for the benefit of plaintiff with respect to the installation to be performed by it under said contract, and in compliance with said contract, the defendant herein issued to the plaintiff such policy of insurance, a photostatic copy thereof being attached to the complaint. The premium on said policy was paid by Combustion as the contract provided. That at the time of the loss herein complained of, said policy was in full force and effect.

In said contract of insurance plaintiff was provided protective public liability to any one individual of not more than $25,000 and a total limit for any one accident of not more than $50,000.

Wallace P. Jackson was employed by Combustion as its Foreman in connection with the work to be done for plaintiff under said contract by it and had full supervision of all of its means and methods.

That on December 22, 1952 Wallace P. Jackson was instantly killed by being struck by a long metal tube which had previously been suspended by Combustion in its installation work under the contract with plaintiff; said tube being one among several that had theretofore been installed as the work progressed. Prior to being struck and instantly killed, Jackson was on the basement floor of said plant, where the work of installation was being done, bending over and engaged in studying a set of the plans of construction which was spread out on the floor, undertaking to ascertain the next step in said installation to be done by his employer; at that time all work and the activity connected therewith had been suspended upon the express instruction of said Jackson, so that he might thereafter be familiar with the exact steps to be next taken and the work to be done. The metal tubing being then installed according to the plans, was to be mounted vertically on metal angle supports, with the bottom of each tube approximately 64 feet above the level of said basement floor. Each tube was approximately 60 feet in length and 1½ inches in diameter, and all a part of the metal boilers then being installed under said contract by Combustion. At the time when Jackson was killed nine tubes had been securely mounted in their proper position in one of the sections of the tubing installation. While the work of Combustion had ceased at the direction of Jackson, one C. S. Burns, General Foreman of plaintiff, requested permission of Jackson to borrow and use the cable and hoist which was being used in the installation of the tubes by Combustion and which was at that time not in use while Jackson was familiarizing himself more thoroughly with the plans of construction, so that Burns as such foreman, and employee of plaintiff, could move three large heavy iron castings, which were on the basement floor from the place as then located, to another so that they would,

when moved, be out of the way of the work being done in the installation of the tubing. These three castings were the property of plaintiff and had no connection whatsoever with the work being done and performed by Combustion. On his request being granted, Burns, as foreman of plaintiff, then instructed one J. G. Zigler, another employee of plaintiff, to take the cable and fasten it to the castings and move them while he, Burns, would direct and give all necessary signals for a proper movement. Thereupon Burns signalled the hoist operator, S. S. Shepherd, an employee of Combustion, to operate the hoist and cable, thereupon moving each casting to a new place and out of the work area of that necessary to continue the placing of the tubes.

While so engaged Shepherd was operating under the direction, supervision and control of Burns. That while said castings were being moved, Burns and Zigler, in the course of their employment by plaintiff, and in furtherance of plaintiff's work, carelessly and negligently caused, or if not so, permitted the cable attached to hoist, to come in contact with one or more of the suspended tubes, causing one of them to jerk or be pulled loose and drop approximately 64 feet to the basement floor and in falling, strike said Wallace P. Jackson on the back of his neck as he was then leaning over studying said plans, breaking his neck and spinal column, severing his jugular vein, and causing instant death.

Thereafter during July, 1953, Jackson's personal representative instituted an action in the United States District Court for the Middle District of North Carolina, against plaintiff, to recover for his wrongful death, seeking by way of damage a recovery in the alleged sum of $200,000.00; alleging among other things the negligence of plaintiff's employees, which proximately caused Jackson's death. In its answer plaintiff made certain admissions and denials, pleaded the North Carolina Workmen's Compensation Act, G.S. § 97-1 et seq., and fur-

ther set out in the answer by way of complete defense, that the deceased Jackson was guilty of and chargeable with contributory negligence and an additional defense of his having voluntarily assumed the risk incident to his employment.

Thereafter with the issues joined, and liability denied, plaintiff compromised said action prior to trial and paid to the personal representative of Jackson's estate the sum of $25,000 together with costs, etc., and additionally paid its attorney fees, which sums paid totalled $2,411.67. These payments together with the judgment amounted to $27,441.27,—the amount sought herein.

Prior to filing answer, plaintiff gave notice to the defendant, of said action pending against it, and requested that it make a defense thereto,—but on the defendant denying liability for lack of coverage under the terms of said policy and refusing to defend said action, plaintiff thereupon acted on its own initiative, filed answer, and ultimately compromised said claim in good faith, and paid said judgment in full, together with the incident costs. On so doing plaintiff then instituted this suit to recover the amount expended after having demanded of defendant that it reimburse plaintiff. It would appear that the settlement made by plaintiff with the representative of Jackson's estate was reasonable and was in itself a proper disposition of said action for wrongful death.

### Conclusions of Law.

The policy of insurance is one apparently designed to afford a protective coverage and by its terms insured plaintiff against acts and omissions, etc., of an independent contractor such as was Combustion. Its terms are apparently plain, and that particular portion thereof material to this suit is as follows:

"Insuring Agreements

"1. Coverage A—Bodily Injury Liability.

"To pay on behalf of the *insured* all sums which the *insured* shall

become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and *arising out of the hazards* hereinafter defined.

"Definition of Hazards

"(a) Operations performed for the *insured* by independent contractors, and omissions or supervisory acts of the *insured* in connection with such work."

■ From the language of the policy the purpose of the parties must be determined and the contract be so construed as to give effect to the intention of the parties. Henderson Lighting & Power Co. v. Maryland Casualty Co., 153 N.C. 275, 69 S.E. 234, 30 L.R.A., N.S., 1105.

■ Plaintiff cites a number of cases on which it relies, and from which it further contends that a recovery should be had in its favor. In fact, plaintiff's case seems wholly predicated on Standard Oil Co. v. Fidelity & Casualty Company, D.C., 66 F.Supp. 603, 607, which was affirmed in 6 Cir., 162 F.2d 715, but other cases are cited and dealt with as bearing on this action. A study of the Standard Oil case does indicate much in common with this suit. The procedure followed is the same, though the facts are not analogous and the coverage is considerably different. In the Standard Oil case the decision was made to depend upon a proper construction of the words in the policy and " 'arising from the work.' " In that case an employee of the independent contractor was injured by being knocked from a scaffold in the grease-rack room of the station then being renovated, by an employee of the insured, when such employee opened an overhead door leading into that room. It would appear therefore that his injury did "arise from the work" then being done by the independent contractor. In our case no work was being done by Combustion at the time of Jackson's death. In fact by his orders it had been stopped. What was being done and which caused Jackson's death was done solely by the employees of plaintiff and through their negligence his death proximately resulted. The operations being done were entirely foreign to that to be done and performed by Combustion—had no direct connection therewith and were wholly acts done and performed for plaintiff by its employees, under the direction of its foreman, Burns, and were not operations performed for the insured by an independent contractor.

The contract of insurance provides for protection in two distinct categories:

(1) Liability arising from operations performed for the insured by independent contractors, and

(2) Liability arising out of omissions or supervisory acts of the insured in connection with such work.

Neither of the above covers the acts of negligence of the plaintiff's employees in my opinion. I conclude therefore that the motion for Summary Judgment should not be allowed and it is therefore denied.

Counsel will present order in accordance with this opinion.