**DUKE POWER COMPANY, a corporation, Appellant,**

v.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, a corporation, Appellee.**

**No. 7109.**

United States Court of Appeals Fourth Circuit.

Argued Jan. 10, 1956.

Decided Feb. 3, 1956.

Harry C. Hewson and Hunter M. Jones, Charlotte, N. C. (William B. McGuire, Jr., Charlotte, N. C., on the brief), for appellant.

William B. Webb, Charlotte, N. C. (Lewis B. Carpenter, Charlotte, N. C., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The question in this case relates to the scope and coverage of an insurance policy issued by Indemnity Insurance Company of North America to Duke Power Company under which the Insurance Company agreed to pay on behalf of the Power Company all sums which it should be obligated to pay as damages because of bodily injury or injury to property caused by accident, and arising out of certain defined hazards. The case was tried upon an agreed statement of facts by the District Judge who reached the conclusion that a claim made by Duke under the policy was not covered thereby. See 128 F.Supp. 262.

Combustion Engineering-Super Heater, Inc. entered into a contract with Duke as an independent contractor, to furnish and install two steam generators at the plant of the Power Company at Spencer, North Carolina. The work described in the contract was part of an addition to a steam generating plant and Duke was engaged at the same time in other phases of the construction work involved in the addition. Combustion was obligated under the contract to furnish at its own expense protective public liability insurance for the benefit of Duke until the completion of the work, and the policy in suit was obtained by Combustion in performing this obligation. The definition of the hazards insured against in the policy included the following paragraph:

"(a) Operations performed for the insured by independent contractors, and omissions or supervisory acts of the insured in connection with such work, except maintenance, repairs or alterations, (other than new construction or demolition operations, including changing the size of buildings or other structures) on premises owned or rented by the insured,".

The crucial inquiry is whether the accident, now to be described, arose out of "operations performed for the insured by independent contractors" or out of

"omissions or supervisory acts of the insured in connection with such work."

For a considerable period prior to December 22, 1952, when the accident occurred, Combustion had been engaged under its contract in the work of installing the generators; and certain metal tubes 1½ inches in diameter and 120 feet in length, weighing 138 pounds each, which constituted the east wall of a boiler, had been suspended vertically in place. Each tube was in two sections 60 feet in length and the bottom of the upper section when suspended was 64 feet above the level of the floor. The upper sections of certain tubes, which were to form the west wall of the boiler, had also been suspended but had not been securely fastened or welded in place. At this juncture Wallace P. Jackson, a foreman employed by Combustion in connection with the work of installation, temporarily stopped the placing of the tubes so that he might study the blueprints. For this purpose he took a position directly under the upper section of the tube last suspended.

Nearby certain cast iron reducers, each of which weighed 400 pounds, belonging to Duke, were stored in the area which was to constitute the interior of the boiler when completed. These reducers were not to be incorporated in the work to be done by Combustion but were to become part of the installation which Duke itself was erecting. The contract provided that Duke should provide Combustion with free and unobstructed access to the site of the erection and it was necessary to move the reducers out of the way of the boiler-makers employed by Combustion. When Duke's foreman perceived that the placing of the tubes by Combustion was temporarily stopped, he requested and received from Jackson permission to use Combustion's hoist and Combustion's regular hoist operator to move the reducers. Thereupon Duke's foreman directed two of Duke's employees to attach the cable of the hoist to the reducers one at a time, while the foreman gave signals to the operator of the hoist direct-

ing him when to tighten up on the cable of the hoist and when to stop. The cable when hanging down passed within 10 inches of the tube last suspended by Combustion under which Jackson had taken his stand. During the operation of removing the reducers, which was performed by the combined efforts of Combustion's hoist operator and Duke's two men under the direction of Duke's foreman, the cable was negligently allowed to come into contact with the tube last suspended, dislodging it and permitting it to fall upon Jackson, causing his instant death.

Duke gave the Insurance Company prompt notice of the accident; and thereafter suit for wrongful death was brought against Duke by the administrator of the estate of Jackson. The Insurance Company was notified of the suit but denied liability for lack of coverage and refused to defend the action. Thereupon Duke, acting upon its own initiative, filed an answer and ultimately compromised the claim, in good faith and upon the advice of counsel, for the sum of $25,000 and paid in addition $2,441.27 for court costs, attorneys' fees and incidental expenditures. It is agreed that the amounts paid in settlement and in expenses were reasonable, and that the only controversy in the pending suit is whether under the facts agreed upon, the insurance policy afforded coverage for the liability of the insured for the wrongful death.

The defense of the Insurance Company is that the insurance contract is a narrow and special type of policy which is restricted to the liability of an owner for the negligence of the independent contractor in the performance of the non-delegable duties of the owner, as defined in §§ 416 and 429 of the Restatement of Torts, and to the liability of the owner for his own failure to exercise reasonable care in the employment of a competent contractor, or in taking precautions for the safe performance of dangerous work, or in giving directions to the contractor, or in failing to inspect the work of the contractor after its com-

pletion, as defined in §§ 411, 413, 410 and 412 respectively of the Restatement of Torts. The policy is said to be a lineal descendant and expansion of the contingent liability policy formerly used by insurance companies to cover the vicarious liability of an owner for the negligence of an independent contractor, of which an example is found in American Cereal Co. v. London Guarantee and Accident Co., 7 Cir., 211 F. 96.

It is argued that the clause of the policy which reads "operations performed for the insured by independent contractors" covers the liability of the employer for the negligent performance by the contractor of the employer's non-delegable duties, and that the phrase which reads "omissions or supervisory acts of the insured in connection with such work" covers the liability of the employer for actions described in the other cited sections of the Restatement; and it is said that no other liability is within the contemplation of the policy. Applying this thesis to the facts of the case it is first contended that the movement of the reducers above described was not an operation performed for the insured by the contractor, because it was work done under the direction of Duke's foreman in execution of a part of the installation which Duke was obligated to perform.

In respect to the alternative clause, relating to "omission or supervisory acts of the insured in connection with such work", the Insurance Company also denies coverage on the ground that the removal of the reducers did not fall within the meaning of the words "such work", which appear at the end of the quotation. It is conceded that the removal was being done by the insured and that the action of Duke's foreman was supervisory, but still it is said that the removal did not constitute "such work", because those words must be interpreted as referring to the operations performed by Combustion for Duke under the prior clause, and not to work done by Duke

itself. In other words, the Insurance Company's position is that it insured Duke against liability for acts done by Combustion in carrying out its part of the installation, and against liability for Duke's acts done in connection with Combustion's work under the contract, but did not insure Duke against liability for work done by it, although the work was related to or connected with the installation of the boilers.

██ We cannot agree with this construction of the policy. It is clear that Duke was seeking protection from such liability as it might incur in connection with the installation of the boilers, for, as we have seen, the construction contract expressly provided that protective liability insurance for the benefit of Duke would be furnished by Combustion. Of course it does not follow that the coverage of the policy in suit is governed by these broad terms. The liability of the insurer must be found in its own insurance contract; but the policy shows on its face that it was issued with reference to the work to be done under the installation contract, and that it was designed to cover certain liabilities of Duke that might arise during the operation from acts performed by Combustion and also from acts performed by Duke. Bearing these considerations in mind, as well as the rule that ambiguity in an insurance contract must be resolved against the insurer,[1] we do not think it can be said that neither of the two hazards defined in the policy was encountered in this case.

While the removal of the reducers was not part of the work to be performed by Combustion, both parties to the construction contract actually participated in the undertaking, Duke through the actions of its supervising foreman and its two employees, and Combustion by supplying the hoist and the man to operate it. The thing to be done was part of the general work of installation without which Combustion's part of the work could not be carried out; and when Com-

1. Roberts v. American Alliance Insurance Co., 212 N.C. 1, 192 S.E. 873, 113 A.L.R. 310.

bustion voluntarily participated in it, although not bound to do so, the joint operation may fairly be said to have been performed by both parties for the benefit of the insured within the meaning of the insurance contract.

We think it is also clear that the death of Jackson was caused by a supervisory act of the insured in connection "with such work". It is not necessary to restrict these words to the work to be performed by Combustion in order to give them a reasonable interpretation. Certainly the removal of the reducers was connected with the work which Combustion was doing at the time. Combustion demonstrated the fact by joining in the removal; but even if this conclusion should be deemed open to doubt, it should be resolved in favor of Duke under the established rule. For a somewhat similar case see Standard Oil Co. v. Fidelity & Casualty Co., D.C.W.D.Ky., 66 F.Supp. 603, affirmed 6 Cir., 162 F.2d 715.

The judgment of the District Court will be reversed and the case remanded for further proceedings.

Reversed and remanded.