WRIGHT CONTRACTING COMPANY,
Plaintiff,

v.

SAINT PAUL MERCURY INDEMNITY COMPANY, Defendant and Third-Party Plaintiff,

J. A. POLHILL, W. K. Dedmon, and Russell Stroupe, Third-Party Defendants.

Civ. No. 1201.

United States District Court
W. D. North Carolina,
Charlotte Division.

May 9, 1957.

40. Strange Deposition 3–4.
41. R. 4–7.

42. R. 6, 18–23, 53; Strange Deposition.

**180**

Lassiter, Moore & Van Allen, Charlotte, N. C., for plaintiff.

Carpenter & Webb, Charlotte, N. C., for defendant St. Paul Mercury Indemnity Co.

Harvey A. Jonas, Jr., and W. H. Childs, Sr., Lincolnton, N. C., for third-party defendants.

WARLICK, District Judge.

This action is brought by plaintiff to recover of the defendant, Saint Paul Mercury Indemnity Company, the sum of $12,707.81 which it alleges it is entitled to have for that it was compelled to pay that amount in exoneration of its bond, previously executed in connection with a contract it obtained for road work in North Carolina.

The action is laid in this court under the diversity statute. Title 28 U.S.C. § 1332.

Plaintiff, Wright Contracting Company, a corporation, is a citizen of the State of Georgia; the defendant, Saint Paul Mercury Indemnity Company, is a corporation, and a citizen of the State of Delaware. J. A. Polhill, W. K. Dedmon, and Russell Stroupe, third-party defendants, are citizens and reside in Lincoln County in the Western District of North Carolina.

On January 12, 1954, plaintiff, Wright Contracting Company, was low bidder and entered into a contract with the North Carolina State Highway and Public Works Commission to do certain road construction work known as State Highway Project No. 4839, in Durham and Wake Counties in North Carolina, and in line with the requirements of North Carolina General Statutes, § 136–28, executed a bond as therein required as principal with the National Surety Corporation of New York as surety in the penal sum of $1,224,390.09, conditioned among other things that plaintiff "shall well and truly pay all and every person furnishing material or performing labor in and about the construction of said project all and every sum or sums of money due him, them or any of them, for all such labor and materials for which the contractor capitalized is liable".

Under date of February 10, 1954, plaintiff entered into a subcontract, which was reduced to writing, with the Lincoln Contractors, Inc., a North Carolina corporation, for certain hauling in connection with said project No. 4839. This subcontract provided among other things as follows:

"A. You, as Hauling Sub-Contractor, agree to furnish and supply all labor, equipment, fuel, tools, supplies and any and all other facilities whatsoever necessary for doing the hauling hereinafter specified for the prices stipulated.

"B. Payments are to be made to Hauling Sub-Contractor by Contractor once each month, based on quantities to be determined as heretofore specified, except that 10% of the total will be retained until the completion of the work involved in this contract, at which time retainage withheld will be paid to Hauling Sub-Contractor upon presentation of proof that all bills for labor and materials in connection with the work have been paid in full.

"C. In support of this agreement Sub-contractor is to furnish to Contractor a performance and payment bond in the sum of $50,000.00."

On said date Lincoln Contractors, Inc., as principal and Saint Paul Mercury Indemnity Company as surety executed a performance bond in favor of and delivered same to Wright Contracting Company in the penal amount of $50,000. Among other things said subcontract bond provided as follows:

"Whereas, the Principal and the Obligee have entered into a written contract, a copy of which is or may be attached hereto, dated the 10th

day of February, 1954, for furnishing and supplying all labor, equipment, fuel, tools, supplies and any and all other facilities whatsoever necessary for doing certain hauling in connection with the construction of Project No. 4839 SF–548(8) and F–447(7), Durham and Wake Counties, North Carolina, the hauling specified in Contract Agreement letter, dated February 10, 1954.

"Now, Therefore, the condition of the foregoing obligation is such that if the Principal shall indemnify the Obligee for all loss that the Obligee may sustain by reason of the Principal's failure to comply with any of the terms of said contract, then this obligation shall be void; otherwise it shall remain in force."

Before the defendant would agree to execute to the plaintiff its indemnity bond in the said sum of $50,000, conditioned on the full compliance of Lincoln Contractors, Inc., with the terms of the contract, it required that the officials of said Lincoln Contractors, Inc., execute to it an indemnity bond conditioned on the fact that they individually and as officials of the corporation, would save the defendant, Saint Paul Mercury Indemnity Company harmless from any liability that might arise from the failure of Lincoln Contractors, Inc. to fulfill and complete its subcontract of hauling as entered into with the plaintiff herein, and in compliance therewith, J. A. Polhill as President, and Dedmon and Stroupe as officials of the company, executed under seal, etc., and delivered to the defendant, Saint Paul Mercury Indemnity Company, such bond of indemnity.

Thereafter Lincoln Contractors, Inc. began the performance of its contract with plaintiff and in due season completed the hauling work in its entirety, paid the payroll of its employees in full, and paid some but not all of the bills of those suppliers who furnished materials and rendered services which were used in the work performed under its said subcontract.

On January 8, 1955 Lincoln Contractors, Inc. was adjudicated a bankrupt in the District Court of the United States for the Western District of North Carolina. Thereafter certain creditors of the bankrupt made demand on and filed claims with plaintiff, in the sum of $40,648.79, and subsequently four separate law suits were instituted against plaintiff in the Superior Court of Wake County, North Carolina. Whereupon the plaintiff, following considerable investigation and under its bond executed to the North Carolina State Highway and Public Works Commission, and the provisions thereof, paid the sum of $17,475.39 to all and every of the creditors of Lincoln Contractors, Inc., in full, and in addition thereto paid legal expenses incurred in the amount of $3,412.80.

At the time Lincoln Contractors, Inc. was adjudicated a bankrupt plaintiff had in its possession as retained by it under the contract with the bankrupt, the sum of $8,180.38, which amount was credited against the sums paid by plaintiff in settlement of the liabilities of the bankrupt, and in such computation plaintiff has sustained a loss in the amount of $12,707.81. On ascertaining its net loss plaintiff made demand upon the defendant, Saint Paul Mercury Indemnity Company, to be reimbursed for the loss which it had suffered. Thereupon the defendant Saint Paul Mercury Indemnity Company denied liability and refused to indemnify the plaintiff. The last and final payment to the creditors of the bankrupt was made by Wright Contracting Company on December 27, 1956.

When the claim was made by plaintiff on the defendant Saint Paul Mercury Indemnity Company for the amount plaintiffs had been compelled to expend for the bankrupt in satisfying those who had furnished supplies and performed services, the Indemnity Company moved that J. A. Polhill, W. K. Dedmon, and Russell Stroupe be made third-party defendants and that it be given full authority to have issued at its request, a summons against the third-party defendants so that the Indemnity Company's rights

could be protected in one action. On December 26, 1956, an order was made bringing these individuals in as third-party defendants and the Indemnity Company was permitted to file its third-party complaint against Polhill, Dedmon and Stroupe.

During the period that elapsed from Lincoln's adjudication in bankruptcy until the final settlement of the claims filed against it, Saint Paul, through its attorneys, worked hand in hand with plaintiff, and though it denied liability in any respect, lent its aid toward the settlements effected, and at all times the third-party defendants were fully apprised of the steps taken and were kept constantly acquainted with the developments. Evidently the settlements made with the claimants were for the benefit of all the parties involved.

The question that primarily concerns us is, "Did Lincoln agree in its contract with plaintiff to pay its bills for labor and material used and incorporated into the work involved in its contract?"

Plaintiff contends that it was obligated directly to the State Highway and Public Works Commission of North Carolina as was set out in its bond executed to such agency, and as required by the laws of North Carolina; that when it sub-let that work to be done by Lincoln Contractors, Inc., that it intended, and that Lincoln likewise agreed that it was to do the work embraced in the contract, and to pay therefor. That Saint Paul so understood and that the terms of the contract are plain and unambiguous and are to that effect. Saint Paul contends that such agreement to pay is not embraced in said contract and that when Lincoln completed its work, that it had performed all of the items of work that it had contracted to do and that it is not liable to the plaintiff on the bond executed, since payment for supplies, materials, etc., is not a part of said contract of indemnity. The answer of the third-party defendants generally admits the allegations of the complaint of the third-party plaintiff, but denies the validity of said bond executed to Saint Paul and sets up a total failure of consideration in its execution and delivery.

■ This being an action between obligor and obligee, arising on a contract entered into between said parties, the rights of the parties in the case are to be determined in the light of the law as declared by the federal courts; but, as the bond here considered was given within the State of North Carolina, it is worthwhile to note that the rule followed by the federal courts is the same as the rule followed by the courts of North Carolina. Warner v. Halyburton, 187 N.C. 414, 121 S.E. 756; Ideal Brick Co. v. Gentry, 191 N.C. 636, 132 S.E. 800; Page Trust Co. v. Carolina Construction Co., 191 N.C. 664, 132 S.E. 804; United States to Use of Stallings v. Starr, 4 Cir., 20 F.2d 803.

■■ It is well established principle, in determining a surety's liability on a bond given for the benefit of another, that the contract for the performance of the work and the bond executed thereunder are to be construed together. Morganton Mfg. & Trading Co. v. Andrews, 165 N.C. 285, 81 S.E. 418. No principle is more salutary than that expressed by Chief Justice Stacy in Ideal Brick Co. v. Gentry, 191 N.C. 636, 132 S.E. 800, 802;—"It is a principle too well established to require the citation of authorities that, 'as a party consents to bind himself, so shall he be bound.'" With that principle before us as the North Carolina law, and as followed by the federal courts in matters of this kind, we go to the contract itself to determine the rights of the parties.

The contract is in the form of a letter, dated February 10, 1954, addressed to Lincoln Contractors, Inc., and signed by the President of the plaintiff herein, and which was agreed to and accepted on the same date by Lincoln, acting through its President.

Among its stipulations are found various statements with respect to the work to be done, the labor to be furnished, and all other factors involved, in a completely performed contract, and contains

a provision for retaining a certain percentage of the money due until Lincoln has presented proof that all bills for labor and materials in connection with its work have been paid in full.

It could hardly be said therefore that the parties did not intend to so bind themselves, and that the language incorporated therein should not be so construed. I could not find otherwise, for one must be impressed from a reading of the contract with the thought that the parties intended just what they agreed to do. To find otherwise would limit the meaning of words.

■ Then, too, bearing these considerations in mind, as well as the rule, that ambiguity in an insurance contract must be resolved against the insurer, Roberts v. American Alliance Insurance Company, 212 N.C. 1, 192 S.E. 873, 113 A.L.R. 310; Duke Power Co. v. Indemnity Insurance Co., 4 Cir., 229 F.2d 588, I do not think the indemnifying bond could be given any other interpretation.

■ Thus I am of the opinion that the defendant, Saint Paul Mercury Indemnity Company is obligated to the plaintiff herein in the amount expended by plaintiff in compromising and adjusting the claims laid against it by those who furnished materials and other factors to Lincoln, all as plaintiff was obligated to do under its bond executed to the North Carolina State Highway and Public Works Commission in compliance with the requirements of North Carolina General Statutes § 136–28; and, that plaintiff thereupon is entitled to have and recover of the defendant, Saint Paul Mercury Indemnity Company the sum of $12,707.81, together with interest thereon at the rate of 6%, from December 27, 1956, together with its costs.

■ I conclude further that under the contract of indemnity executed by J. A. Polhill, W. K. Dedmon and Russell Stroupe, third-party defendants, and stockholders and directors in, and officials of, the Lincoln Contractors, Inc., to Saint Paul Mercury Indemnity Company, third-party plaintiff, are indebted in the amount awarded against Saint Paul to the plaintiff and that the third-party plaintiff is entitled to have and recover that sum of the third-party defendants.

Since it appears that the third-party defendants stipulated and agreed that Saint Paul Mercury Indemnity Company should employ counsel to work with plaintiff in a settlement of the claims filed against the plaintiff, I will hold in abeyance, until a hearing is had, the setting of attorney fees to be paid by the third-party defendants.

Counsel will submit decree.