415 P.2d 465

Michael LAWLESS, aka M. V. Lawless and Lee Lawless, husband and wife, dba Arthur Murray Studio, Appellants,

v.

Maude O. ENNIS, Appellee.

No. 1 CA–CIV 256.

Court of Appeals of Arizona.

June 17, 1966.

452

James L. DeSouza, Phoenix, for appellants.

Kenneth L. Abrams, Alan M. Kyman, Phoenix, for appellee.

DONOFRIO, Judge.

This is an appeal from a summary judgment granted in favor of the appellee, plaintiff below, and against the appellants, defendants below.

Many issues are raised in the briefs but we consider one crucial question determinative of this appeal, namely, whether the court erred in granting plaintiff's summary judgment. If the pleadings, depositions, answers to interrogatories, affidavits and admissions which were considered by the court showed that there was a genuine issue as to any material fact involved in the issues formed by the pleadings, then the court was in error and the cause must be remanded. A summary judgment can be granted only where no genuine issue as to any material fact exists. Rule 56 (c), Amended Rules of Civil Procedure, 16 A.R.S. Sarti v. Udall, 91 Ariz. 24, 369 P.2d 92 (1962); Continental Casualty Company v. Grabe Brick Co., 1 Ariz.App. 214, 401 P.2d 168 (1965); Goetz v. Phillips, 2 Ariz.App. 370, 409 P.2d 86 (1965).

Hereafter we designate the appellee as plaintiff and the appellants as defendants. Plaintiff on August 29, 1960, filed a complaint against defendants containing seven alternative claims, seeking recovery of $13,-500 claimed to have been paid the defend-

ants for dancing instructions. Defendants filed a verified answer to each of the claims admitting, in substance, payment to them by plaintiff of the sum of $13,170 on the contracts entered into but denying any indebtedness or obligation on their part as alleged by plaintiff, and they set forth several affirmative defenses. A pre-trial conference was held on February 18, 1965, at which time plaintiff amended her complaint by amending the figure of $13,500 to $13,200 and deleting the fourth, fifth, sixth and seventh claims. This left remaining the first, second and third claims. In the original complaint plaintiff based the first claim on money had and received by defendants for the use of plaintiff; the second claim urges a constructive trust on the theory that her health unknown to her at the time was such that she could not continue with the dancing lessons and therefore asked for return of the money paid; and the third claim was based on an unjust enrichment theory. As to the second and third claims plaintiff deleted certain allegations changing the theories originally advanced. To the second claim plaintiff added the following:

> "That Plaintiff made a mistake in entering into said Contract with Defendants in assuming that she was in good health when in fact she was not; that Defendants were mistaken in entering into the Contract with Plaintiff in assuming that Plaintiff was in a good state of health; that such constitutes a mutual mistake and Plaintiff is therefore entitled to rescind said Contract and recover the consideration paid less a reasonable sum for lessons and activities in which she actually participated."

To the third claim plaintiff substituted the following:

> "That Defendants and their agents used high pressure salesmanship, flattery and other unconscionable tactics to induce Plaintiff to enter into said Contract; That Defendants knowing that Plaintiff was an elderly widow, took undue and unconscionable advantage of the Plaintiff in securing her consent to said Contract and in inducing her to part with $13,200.00 in cash."

Plaintiff prayed for rescission of the contract and the return of the money less the reasonable value of the services received by her. Defendants filed a verified supplemental answer denying the allegations contained in the amendments and setting forth several affirmative defenses. Defendants also urged that the amendment which was based on high pressure salesmanship, flattery and unconscionable tactics was barred by the statutes of limitations §§ 12–543 and 12–550 A.R.S. Defendants also set up the defense of laches.

On March 24, 1965, defendants filed a motion for summary judgment which was denied. Thereafter, on April 30, 1965, plaintiff filed her motion for summary judgment which was granted and a formal written judgment thereon was signed on June 22, 1965. The court in granting the Summary Judgment based it on a single ground, namely, that the sale of the dancing contracts constituted an unconscionable bargain and was overreaching. The finding in the judgment reads:

> "that such sales by the Defendants constitute an unconscionable bargain and constitutes overreaching and entitles the Plaintiff to rescission of the contract at Plaintiff's option at any time thereafter."

In reviewing a motion for summary judgment this court will view the record in the light most favorable to the party opposing the motion. Sarti v. Udall.

The depositions, affidavits, answers to interrogatories and documentary exhibits constitute the only evidence before the court. We have chosen to quote from the memorandum of facts appended to plaintiff's response to defendants' motion for summary judgment which was verified by affidavit of plaintiff, for her version. Although it contains many conclusions, nevertheless, the record substantially supports

the facts related therein. Under the heading "The Facts" appears the following:

"Maude Ennis, a 69 year old lonely, unhappy widow, whose life was one boring bridge game after another, received a telephone call one day while she was at home, pondering what to do about her vacuous existence.

It was the Arthur Murray Studio calling. Would Mrs. Ennis like to come to the studio for a free trial lesson?

She said, 'No.'

A few days later Arthur Murray called again, making the same offer. Finally, Mrs. Ennis bored and lonely with time hanging heavily upon her hands, with the clock of life ticking on, went to Arthur Murray's.

The studio was nice. Many people were there, enjoying themselves at what appeared to be a party. The instructors were gentlemen; they were very polite, very solicitous, and intent upon showing Mrs. Ennis a good time. And of getting her to sign a contract.

Shortly thereafter, she signed the first of three contracts, the last of which was for $13,120 and entitled her to a lifetime membership.

When the lifetime membership was presented to Mrs. Ennis (during a party at the studio) she was told that she ought to act quickly, as Arthur and Kathryn Murray were coming to town, and that if her application for life membership was accepted, she would be personally introduced to them. She was also told that life memberships would soon be closing and that she had better act quickly.

Mrs. Ennis was accepted as lifetime student. She was invited to a party at the studio and told she would be introduced to the Murrays. She was driven out to the Arizona Biltmore by one of the instructors.

She was told to wait in the lobby. A few minutes later the Murrays appeared, shook hands with Mrs. Ennis, congratulated her upon being accepted as a lifetime student and left.

Thereafter, Mrs. Ennis was repeatedly requested to produce a letter from her physician. She did, from one she hadn't seen in approximately a year.

Now that she had become a lifetime student and had parted with $13,120, Mrs. Ennis no longer received any further deferential attention from the instructors. She didn't learn to dance a step.

Her back bothered her. She had a few black-outs and severe headaches.

After she left Phoenix for the summer for the solitude and tranquillity of her small cabin in the Rockies, while she was away from the pressure of life in the city, in the mountains she enjoyed so much, it occurred to her that she had been a fool to sign the life contract, to succumb to the blandishments and flattery of the people at Arthur Murray's. She realized she never was able to enjoy herself dancing because of her health, she learned she had arthritis, and, because, as she has stated, she had 'Methodist feet.'

When she came back, she discussed this with one of her instructors at the studio. He said not to mention it to anyone from the studio, but to bring a law suit."

To set out some of defendants' contradictions and denials to plaintiff's contentions we quote portions of the defendant Michael V. Lawless's affidavit which is appended to their motion for summary judgment:

"That at no time has plaintiff Maude O. Ennis, or anyone on her behalf, made any claim to affiant that the defendants in this action, or any of their agents, ever used high-pressure salesmanship, flattery and other unconscionable tactics to induce plaintiff, Maude O. Ennis, to enter into any contract or ever took undue and unconscionable advantage of said plaintiff in securing her consent to

any contract or in inducing her to part with any sum of money whatever, * *.

That defendants never personally subjected plaintiff to any conduct of the type referred to in plaintiff's Third Claim as amended * * * and affiant has no knowledge that any of defendants' agents every subjected plaintiff to any such conduct. * * * That plaintiff, upon enrolling as a student pursuant to said contract completed 100 hours of instruction on April 22, 1960 and did not thereafter present herself for instruction or receive instruction from defendants. * * *

That defendants, including affiant, do not have, and have never had any actual knowledge of any of the matters complained of in the Third Claim of plaintiff's complaint as amended * * * and are unable to determine from said amended complaint the nature of the 'high-pressure salesmanship, flattery and other unconscionable tactics to induce plaintiff to enter into said contract' or the 'undue and unconscionable advantage' alleged to have been taken of plaintiff in securing her consent to 'said contract' and in inducing her to 'part with $13,200 in cash' as alleged in said Third Claim of plaintiff's complaint as so amended, and defendants, including affiant, have no knowledge as to the identity of 'agents' alleged to have engaged in such conduct nor the place or persons present when said conduct was allegedly engaged in, nor which of the three contracts between plaintiff and defendants attached hereto is the contract referred to in said Third Claim, nor what payment in cash is referred to herein, the fact being that plaintiff paid the sum of $13,170 in several payments at different times including November 20, 1959, November 28, 1959, December 7, 1959, December 9, 1959, December 17, 1959, and possibly December 18, 1959. That lacking such knowledge and having had no reasonable opportunity to ascertain the nature of plaintiff's Third Claim as amended, and

as set forth in her amended complaint only in vague and uncertain terms and without particularity, defendants have been unable to determine the precise nature of the acts or omissions intended to be charged against them by said Third Claim as amended * * *.

That plaintiff never made known to affiant any claim that her condition of health impaired her ability to receive dancing instruction in safety until some time in February, 1961, at which time plaintiff's attorney wrote a letter to affiant stating that plaintiff was not in such health as to be able to participate in activities to which she was entitled by her contract without jeopardi[g]in[z] her health. This letter was written approximately 8½ months after plaintiff ceased taking instruction at defendants' school. That on or about April 7, 1960, approximately 3½ months after plaintiff entered into her last contracts with the defendants, plaintiff caused her physician, Thomas F. Schooley, D.O. of 100 W. Osborn Road, Phoenix, Arizona, to assure defendants in writing that plaintiff was in good health as of April 7, 1960, and that letter was delivered to Defendants on or after April 7, 1960. A true copy of that letter is attached hereto marked Exhibit 4.

That it was never contemplated by either plaintiff or defendants that plaintiff's enrollment, contracts, or the payment of tuition by her were in any way dependent upon her maintaining continued good health or upon her remainin such condition of health as to be able to receive dancing instruction from defendants or to participate personally in any activities to which her contracts entitled her. Plaintiff received instruction at a substantially consistent rate from November 23, 1959 to April 22, 1960 within which period she received 100 hours of instruction. Had she continued her instruction at that average rate of approximately 20 hours per month approximately five years of constant in-

struction would have been required to complete her courses and, had she absented herself from Phoenix during portions of the year, a longer period would have been required to complete her instruction. That in fact it was at all times planned and contemplated that plaintiff might not be able to complete her instruction and, with that knowledge in mind, plaintiff made arrangements for her children and grandchildren to use such hours of instruction as she did not herself use. Pursuant to this plan, plaintiff on or about April 5, 1960, executed and delivered to defendants a written instrument providing for the assignment for the use of others of such hours of instruction under her contracts as plaintiff did not use personally. That a true copy of said instrument is attached hereto marked Exhibit 5. That defendants acquiesced and agreed to such assignment and that such hours of instruction remaining unused by plaintiff personally are, and at all times have been available for use under such assignment as directed therein."

A bare reading of these two verified instruments shows that there are many genuine issues of material facts precluding a summary judgment as a matter of law.

The statement made by counsel at the time he was resisting defendants' motion for summary judgment to the effect "[t]he plaintiff's and defendants' version of the facts are diametrically opposed so there are genuine issues of material facts" could well apply to the instant motion.

[4–7] Summary judgment should be cautiously invoked and used only when it clearly appears that there are no triable issues of fact otherwise it deprives the parties of a full hearing on the merits of the case. Even in cases where the judge may be of the opinion that he will have to direct a verdict for one party or the other on the issues he should hear the evidence first rather than attempt to try the case in advance on motions for summary judgment. When the case is

tried evidence may be produced which would put an entirely different light upon what happened. Hoffman v. Babbitt Bros. Trading Co., 9 Cir., 203 F.2d 636 (1953). The burden in the instances of fraud or imposition or where the contract was executed under a mistake of fact is upon the party asserting same. Written contracts are presumed to be fair and honest in their inception and execution. Bradley v. Industrial Commission, 51 Ariz. 291, 76 P.2d 745 (1938).

We do not believe that a further discussion of the facts and issues or the law applicable thereto is necessary since the case is to be sent back for trial. We do not pass upon any of the claims in the amended complaint. The defenses of the statute of limitation and laches can only be determined after the facts are ascertained. The summary judgment is set aside and the cause remanded.

Reversed.

STEVENS, C. J., and CAMERON, J., concur.