## GLENS FALLS INSURANCE COMPANY *v.*
## AMERICAN OIL COMPANY

[No. 203, September Term, 1968.]

*Decided June 5, 1969.*

*Motion for rehearing filed June 10, 1969; denied June 23, 1969.*

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, MCWILLIAMS, FINAN and SINGLEY, JJ.

*Alva P. Weaver, III* and *Robert P. Schlenger,* with whom were *Lord, Whip, Coughlan & Green* on the brief, for appellant.

*Lloyd J. Hammond,* with whom were *George Barrett Johns, James Temple Smith, Jr. & Smith, Bottom and Smith* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

This appeal presents for the first time in this Court the question of whether or not an insurer in the usual type of automobile liability policy may, in an action by a third party seeking indemnity under the policy, raise a defense of non-coverage based on an intentional, non-accidental act by the insured, subsequent to a judgment in

favor of the third person against the insured in an action in which the declaration declared in negligence and in which the insurer was not a party and did not defend.

As the court below directed a verdict against the appellant, Glens Falls Insurance Company (Glens Falls), we must assume that Glens Falls could have proved the following facts, as alleged, to be true.

On December 29, 1964, at approximately 7:10 p.m., Mrs. Hilda P. Jordan, after returning home from her work, requested her husband, Leonard J. Jordan, to drive her to their daughter's home in Baltimore County not far from the residence of the Jordans. While proceeding to the daughter's home, Mr. Jordan told his wife that he would "run you into these trees." Mrs. Jordan said, "Well, you cannot do it without hurting yourself." Mr. Jordan kept on driving and when he approached the daughter's home, he refused to stop, proceeded to the end of Bond Avenue at its intersection with Reisterstown Road. Mrs. Jordan attempted to leave the automobile when Mr. Jordan failed to stop at the stop sign requiring motorists to stop on Bond Avenue before entering Reisterstown Road, but was unable to get out because the handle on the car door was broken. A short distance from Bond Avenue on Reisterstown Road was a gasoline filling station of American Oil Company, the appellee (American). After entering Reisterstown Road, Mr. Jordan stated that he would run into the tanks of the American gas station which he proceeded to do. After striking the gas tanks the automobile driven by Mr. Jordan turned over on its left side and caught fire. The impact had thrown the Jordans to the back seat. Mrs. Jordan wound the window down on the rear right side, whereupon Mr. Jordan pushed her aside and got out himself. Dan Burgess, the lessee of the American gas station responded to Mrs. Jordan's cries for help, climbed upon the burning vehicle and helped Mrs. Jordan to get out.

Officer Cookerly of the Baltimore County Police Bureau arrived at the scene shortly after the occurrence. He testified that when he arrived both Mr. and Mrs. Jordan

were out of the automobile, although he later stated that both of the Jordans were in his vehicle when he questioned Mr. Jordan in regard to how the occurrence took place. He testified that Mr. Jordan said that he lost control of the automobile and ran into the gas tanks and further that Mrs. Jordan did not dispute the account of the occurrence. Mrs. Jordan denied that she was present at the first alleged interview and testified that as soon as she regained her senses from the shock of the impact and the other circumstances, she immediately walked to her daughter's home which was only about a block away. Mr. Burgess stated in his testimony that he did not recall seeing Mrs. Jordan at the gas station after he had jumped down from the burning vehicle.

She testified that when the officer asked her if she needed medical attention, she indicated that she did not. The reason she did not tell the officer then what she later told him was: "I was too confused at that moment." She said she was "upset," and she "did not say anything."

During the morning of January 4, 1965, Mrs. Jordan called the police and talked with Officer Cookerly and told him that her husband had intentionally driven his automobile into the gas tanks on December 29 in order to kill her. This was verified by Officer Cookerly's testimony. She testified that her husband suffered from multiple sclerosis, was under active medical treatment, but she did not observe anything unusual about him when he returned home from his work on December 29. She testified that she called the police on January 4 "to see if they could get him out of the house. He had been in the house all that week, and I knew he was either sick or needed attention at the time, because he had been there a week almost." She then gave Officer Cookerly a statement in regard to the happening of the occurrence at that time.

Officer Armacost went to the Jordan home later on January 4 and at approximately 11:58 a.m. found Mr. Jordan dead with a coat hanger around his neck. Mrs. Jordan was interviewed later in the afternoon of January 4 at

the Reisterstown police station and she gave Officer Fielding at that time the same version of the happening of the occurrences of December 29, 1964, as she gave in her testimony in the Circuit Court for Baltimore County on April 29, 1968.

American filed an action on June 15, 1966, against the administrator of Mr. Jordan's estate in the People's Court of Baltimore County and gave Glens Falls Insurance Company, Mr. Jordan's insurer and appellant in this case, notice of the filing of the action. On August 23, 1966, American took a judgment by default against the defendant administrator. This judgment was made absolute in favor of American against the administrator of Mr. Jordan's estate on August 23, 1966. In the declaration filed in this People's Court action, it was alleged in relevant part:

> "[T]hat on said date, Defendant's decedent was operating a motor vehicle owned by him in a northerly direction on Reisterstown Road, and did then and there carelessly, recklessly and in a negligent manner cause said vehicle to leave the traveled portion of the highway and to strike and run into the property owned by the Plaintiff; that the Defendant's decedent, Leonard J. Jordan, was negligent in that he was operating his vehicle at a high and improper speed in the circumstances then and there prevailing, failed to stop or divert the course of his vehicle and to avoid colliding with the Plaintiff's property when in the exercise of due care he could and should have done so, and the Defendant's decedent was otherwise careless, reckless and negligent; and the Plaintiff further says that all of its losses and damages were directly caused by the negligence of the Defendant's decedent without any negligence on the part of the Plaintiff thereunto directly contributing." [1]

---

1. Although it does not appear in the transcript of the record in this case, Glens Falls stated the following in its brief and

American, on November 25, 1966, issued a writ of fieri facias on the judgment against the administrator of Mr. Jordan's estate and the Sheriff made a return of *nulla bona* on November 30. Thereafter American made demand upon Glens Falls to pay the judgment, interest and costs and payment not being forthcoming, filed the present action in the Circuit Court for Baltimore County to recover the amount of the People's Court judgment. Glens Falls defended on the ground that there was no coverage under the automobile liability insurance policy in which Mr. Jordan was the insured and that the loss described in the declaration did not happen through any negligence of Mr. Jordan, the decedent.

After taking testimony, hearing argument and considering trial memoranda, the Circuit Court (Jenifer, J.) filed a written opinion in which the trial court indicated that the insurer, having received notice of the action and having failed to participate, was concluded by the judgment in the People's Court action and was estopped by that judgment from raising the question of coverage in the pending case. The trial court entered a judgment absolute in favor of American against Glens Falls on July 25, 1968, for $2,359 with interest from August 23, 1966. A timely appeal was taken from that judgment by Glens Falls to this Court.

Two questions were briefed and argued before us on this appeal:

1. Did the trial court err in ruling that the insurer, Glens Falls, was estopped by the judgment in the People's Court from raising the question of coverage under the in-

---

in substance at the argument, which was not contradicted by American either in its brief or at the argument: "Prior to trial in this People's Court action, the Glens Falls Insurance Company, after a full investigation as to the happening of said occurrence, took the position that there was no coverage under the policy in question due Mr. Jordan. Proper notice was given to the Administrator of the deceased insured. Even before the final decision as to non-coverage was made, the Glens Falls Insurance Company attempted to proceed and defend the People's Court suit under a non-waiver agreement. The Administrator for the deceased insured refused to sign the proposed non-waiver agreement upon instructions from the attorney for the American Oil Company."

surance policy because the property damage of American resulted from intentional, non-accidental conduct of the insured?

2. Was the evidence before the trial court sufficient to establish coverage under the policy to pay for property damage caused by the insured's negligence?

The trial court did not find it necessary, in view of its opinion that Glens Falls was estopped by the People's Court judgment from raising the question of coverage because of intentional, non-accidental damage, to pass upon the second question. Inasmuch as there is conflicting evidence and inferences in regard to the second question, we will remand the case to the trial court to try the second issue because we are of the opinion that the trial court was in error in its ruling on the first question. See Maryland Rule 874 a.

The policy issued by Glens Falls to Mr. Jordan, the insured, provides in relevant part, as follows:

### "INSURING AGREEMENTS

"I. * * *

"Coverage B-Property Damage Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, *caused by accident and arising out of the ownership, maintenance or use of the automobile.* (Emphasis supplied)
* * *

"II. Defense, Settlement, Supplementary Payments: *With respect to such insurance as is afforded by this policy* for bodily injury liability and *for property damage liability,* the company *shall*:

"(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; *but*

*the company may make such investigation,* negotiation and settlement of *any claim or suit as it deems expedient;"* (Emphasis supplied)

It is apparent to us that under the clear terms of the policy, the insurer is obligated under Coverage B to pay only for that property damage *"caused by accident."* We construed these words in a liability policy in *Harleysville Mutual Casualty Company v. Harris & Brooks, Inc.,* 248 Md. 148, 235 A. 2d 556 (1967). Judge Singley, for the Court, in the opinion in that case, quoted the definition of an "accident" from both the *Shorter Oxford English Dictionary* (2d Ed. 1939) and *Webster's Twentieth Century Dictionary* (1950). In the *Shorter Oxford English Dictionary* "accident" is defined as " 'Anything that happens. An event; especially an unforeseen contingency * * *.' " *Webster's* expands this definition somewhat as follows: " 'a happening; an event that takes place without one's foresight or expectation; an event which proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected * * *.' " In reversing the trial court's judgment against the insurer in that case, we recognized that there was a distinction between "caused by accident" and an intentional act, the consequences of which were clearly foreseeable as well as a necessary and natural result thereof.

See also 7 Appleman, *Insurance Law and Practice,* Section 4312 (1942), bearing the heading, *Accident, Caused by Ownership, Maintenance or Use — Construction of Terms—(a) Accidental Injury,* where it is stated at pages 129-32:

> "It is quite clear that the term 'caused by accident' would not include injuries intentionally inflicted, this generally being considered a risk which it would be against public policy to insure.
> * * *
> "An accident, in the eyes of the law, is an undesigned and unforeseen occurrence of an unfor-

tunate character resulting in bodily injury to another. It is a more comprehensive term than the simple term 'negligence', although negligence is, of course, included therein, and refers to an unexpected happening rather than one occurring through intention or design. And whether or not an injury is accidental has been held determinable by the state of mind of the person who inflicts the injury, rather than by that of the injured person. This means that the policy will not cover injuries which have been motivated by an intent to injure, some cases even attempting to distinguish between the term wilfulness and that of wantonness."

See also the annotation entitled, *Automobile indemnity or liability policy as covering accident or damage due to wilful or wanton conduct or gross negligence*, 173 A.L.R. 503 (1948) and supplemented in 20 A.L.R.3d 320 (1968).

As the posture of the case requires us to assume that Glens Falls can prove that the damages here resulted from an intentional wrong and were not within the coverage of the policy, the only question for decision here is whether Glens Falls is precluded from raising this defense, as a result of its failure to participate in the action in the People's Court of Baltimore County, which resulted in an adjudication of liability of its insured, Mr. Jordan, based on negligence. More simply, the issue is whether Glens Falls is estopped from re-litigating the issues which were decided in the People's Court proceeding.

The answer to this question is not an easy one, as we find that there are competing judicial philosophies which produce opposite results. As might be expected in this situation, there is a conflict in the authorities which we do not believe can be adequately reconciled.

The line of cases which holds that the insurer is collaterally estopped by the judgment entered in the action against the insured based on negligence of which it has

notice, whether it defends or does not, to raise the question of lack of coverage because an intentional act of the insured caused the injury, is perhaps best illustrated by *Miller v. U. S. Fidelity & Guaranty Co.*, 291 Mass. 445, 197 N. E. 75 (1935). This was a case factually similar to the instant case. In holding that the insured was collaterally estopped by the prior judgment against the insured, the Supreme Judicial Court of Massachusetts stated:

> "The object of the policy is protection against law suits and legal liability. This object could not be attained if the insured were compelled to try over again in an action against the insurer the same issues upon which he has been found liable in the original action. Where an action against the insured is ostensibly within the terms of the policy, the insurer, whether it assumes the defense or refuses to assume it, is bound by the result of that action as to all matters therein decided which are material to recovery by the insured in an action on the policy."
> (291 Mass. at 448, 197 N. E. at 77)

See also *Stefus v. London and Lancashire Indemnity Co.*, 111 N.J.L. 6, 166 A. 339 (1933) — (a 10 to 4 decision), *cert. denied*, 290 U. S. 657, 54 S. Ct. 73, 78 L. Ed. 569; *Medeiros v. First Ins. Co.*, 50 Haw.     , 441 P. 2d 341 (1968); *Sims v. Illinois Nat. Cas. Co.*, 43 Ill. App. 2d 184, 193 N.E.2d 123 (1963).

The cases which hold that the insurer is not collaterally estopped by the prior judgment against the insured are best exemplified by the decision of the United States Court of Appeals for the Fourth Circuit in *Farm Bureau Mutual Automobile Ins. Co. v. Hammer,* 177 F. 2d 793 (4th Cir. 1949), *cert. denied*, 339 U. S. 914, 70 S. Ct. 575, 94 L. Ed. 1339 (1950). Not only was the majority of the Court in the *Hammer* case composed of two eminent Maryland lawyers and judges, Soper, Ct. J. and Chesnut, D.J., but the reasoning of the Court in that case appeals

to us as expressing the better and wiser policy for adoption by us:

Judge Soper, for the Fourth Circuit, said:

"In support of the conclusion that the Insurance Company is now estopped to show that the damages from the collision were not covered by the policy, the defendants rely on the decisions in Miller ·v. U. S. Fidelity & Casualty Co., 291 Mass. 445, 197 N.E. 75; Stefus v. London & Lancashire Indemnity Co., 111 N.J.L. 6, 166 A. 339; Jusiak v. Commercial Cas. Co., 169 A. 551, 11 N.J. Misc. 869; Jackson v. Maryland Cas. Co., 212 N.C. 546, 193 S.E. 703; cf. American Cas. Co. v. Brinsky, 51 Ohio App. 298, 200 N.E. 654; B. Roth Tool Co. v. New Amsterdam Casualty Co., 8 Cir., 161 F. 709. Special reliance was placed by the District Judge upon Miller v. U. S. Fidelity & Casualty Co., supra, wherein the holder of an automobile insurance policy, having paid a judgment for damages recovered against him by an injured person in a Florida court on the ground of negligence, sued the Insurance Company in Massachusetts to recover his outlay. The policy insured the holder against damages imposed upon him for bodily injury accidentally caused by the use of his car, and also obligated the company to defend all suits against the insured where such damages were claimed. The company, however, refused to defend the Florida suit and offered to show in the subsequent suit of the insured against it in Massachusetts that the injuries were not caused by accident but by the intentional act of the insured when, in the course of a violent dispute, he deliberately crowded the car of the injured person off the road. The trial court found that the insured's act was intentional, and absolved the company from responsibility; but on appeal

the Supreme Court of the State applied the principle on which the District Judge relied in the present suit and held that the company was bound by the Florida judgment.

"It is obvious that this case is closely similar to the case at bar and furnishes an apt precedent for the decision of the District Judge. We are, however, unable to follow it because, in our opinion, it extends the principle to a situation to which it does not apply and overlooks the true ground on which the principle is based. The underlying purpose of the doctrine is to obviate the delay and expense of two trials upon the same issue—one by the injured party against the indemnitee and the other by the indemnitee, or the injured party against the indemnitor. This is possible because it is assumed that the interests of the parties to the contract of indemnity in opposing the injured person's claim are identical; and it is accomplished by giving the indemnitor an opportunity to appear in the first suit on behalf of the indemnitee so that everything that can be offered in exculpation of the indemnitee by either party to the indemnity contract may be presented. The indemnitor may not be under a contractual obligation to defend, but if he fails to assume the burden of the defense he takes the risk for he is bound by any judgment against the indemnitee where their interests in the defense of the suit are identical.

"It is, however, obvious that the binding effect of a judgment against the insured does not extend to matters outside the scope of the insurance contract, and that the Insurance Company is neither obligated to defend nor bound by the findings of the court if the claim against the insured is not covered by the policy. To hold otherwise would be to estop the Insurance Company by the acts of parties in a transaction in which

it has no concern and over which it has no control, and to deprive it of its day in court to show that the transaction is foreign to the contract of insurance. 'If it cannot do this,' as was said in the dissenting opinion in Stefus v. London & Lancashire Indemnity Co., 111 N.J.L. 6, 166 A. 339, 341, 'it is at the mercy of every unscrupulous litigant who, regardless of his facts, sees fit to falsely allege a claim on which the insurance company would be liable and thereunder establish another claim on which no liability could attach, and forsooth collect because the insurer cannot show the true facts.'" (177 F. 2d at 799-800)

After pointing out that the Court's position was in accord with Restatement, *Judgments,* § 107(a) and other annotations, Judge Soper further stated:

"It is obvious that the Insurance Company was not qualified to undertake the defense of the insured in the suits by the injured parties against him, and that this disqualification was due to the insured's own conduct. It was not possible for the company in these suits to defend the insured, and at the same time to protect its own interests. It could not exculpate itself by showing that the injurious acts of the insured were beyond the scope of the policy, for this showing would establish the liability of the insured to the injured parties to an even greater extent than that claimed in the complaints. See Pfarr v. Standard Oil Co., 165 Iowa, 657, 671-672, 146 N.W. 851, L.R.A. 1915c, 336.

"The situation is not changed by the express agreement of the company in the policy in suit to defend any suit against the insured based upon alleged actions within the coverage of the policy. The clear purpose of this provision is to impose upon the company not only the obliga-

tion to pay any judgment against the insured, but also to bear the burden of defending any suit against him within the purview of the policy. It could not have been intended, however, to extend the coverage of the policy or to nullify its conditions. That would have been the case if the company were not only bound to defend any action for damages alleged to have been caused by accident due to neglect, but should thereby be estopped to show in any court that the damages were intentionally caused by the criminal conduct of the insured. If that were so, the assault and battery clause would be effectively excised from the indemnity contract and the insured, as well as the injured party, as subrogee of the rights of the insured, would be able to avoid one of the conditions upon which the policy was issued. The Insurance Company was justified in withdrawing from the defense of the suit in the Virginia court when the character of the insured's conduct was disclosed, and by so doing, it preserved its right to make its present defense." 177 F. 2d at 801)

See *Williams v. Farmers Mutual of Enumclaw*, 245 Ore. 557, 423 P. 2d 518 (1967) ; *Daniel v. State Farm Mutual Ins. Co.*, 233 Mo. App. 1081, 130 S. W. 2d 244 (1939) ; Cf. *Karpe v. Great American Indemnity Co.*, 190 Cal. App. 2d 226, 11 Cal. Reptr. 908 (1961) ; *Murray v. Landenberger*, 5 Ohio App. 2d 294, 215 N. E. 2d 412 (1966).

See also Restatement, *Judgments*, § 68 (1) and (2), § 107, comment (g) (1942) ; 46 C.J.S. *Insurance*, § 1251, pages 259-60 (1946) ; two annotations in the American Law Reports, *Consequence of liability insurer's refusal to assume defense of action against insured upon ground that claim upon which action is based is not within coverage of policy*, 49 A.L.R.2d 694 (1956), and *Allegations in third person's action against insured as determining liability insurer's duty to defend*, 50 A.L.R.2d 458 (1956) ;

and case notes commenting favorably upon the decision in the *Hammer* case, i.e., 63 Harvard Law Review 898 (1949) and 35 Virginia Law Review 1095 (1949). Cf. *Pat Perusse Realty Co. v. Lingo,* 249 Md. 33, 238 A. 2d 100 (1968), in which Chief Judge Hammond reviewed the prior Maryland cases and the authorities in regard to the relaxation of the requirement of mutuality in asserting the plea of res judicata under certain circumstances.

It appears that there are valid policies which support both lines of authority. On the one hand, there is the policy of the common law that judgments should be final, that litigation be minimized, and that the possibility of inconsistent judgments be avoided. Thus, it is preferable that the rights and duties of all parties interested in a particular subject matter be settled in a single action. To this end, it is well established that the parties to an action and their privies may not re-litigate, in a subsequent action, issues which were or could have been decided in the first action, except under the most compelling circumstances.

On the other hand, there is the policy of due process of law which requires that a party have his "day in court." We believe that this policy recognizes a fundamental right which may override any considerations of efficiency or expediency served by the minimization of litigation.

Thus, while it is clear that the requirements of due process would be satisfied when a named party to an action actually litigated a particular issue or could have litigated that issue, in the present case, Glens Falls was not in such a position. Similarly, the fact that Glens Falls was not a named party would not present any objections to holding it bound by the first decision, had it actually participated in that action. See, *e.g., Bros, Inc. v. W. E. Grace Mfg. Co.,* 261 F. 2d 428 (5th Cir. 1958) ; *Hartford Accident and Indemnity Co. v. Gainesville Nat. Bank,* 124 F. 2d 97 (5th Cir. 1941).

See also James, *Civil Procedure,* § 11.27 at 590 (1965), where it is stated:

"A person not named as a party may in fact

take over the control of an action. * * * Where he does so to protect some financial or proprietary interest that he has in the judgment or in the transaction or occurrence giving rise to the action, he will be bound by the determination of fact or law involved in the judgment according to the rules of collateral estoppel. * * *."

In the present case, however, Glens Falls was neither a named party to the suit nor an unnamed participant in the litigation before the People's Court of Baltimore County. Under these circumstances, we do not believe that it may be held to be concluded by the findings of that court and not given its "day in court" unless its failure to participate in that action involved some degree of culpability on its part. The appellee contends that Glens Falls, having received notice of a claim against its insured, arguably within the coverage of the policy, should be estopped because of its "sitting idly by and taking no action," to defend the action against its insured. We believe that for this to be correct, it must be because Glens Falls violated some contractual duty to its insured, and we find no such violation.

While, at first glance, it would appear that the insurer's agreement under "insuring Agreement II" to "defend any suit against the insured * * * [within the coverage of the policy], even if such suit is groundless, false or fraudulent." absolutely obligated it to defend the action instituted in the People's Court, we agree with Judge Soper, in the *Hammer* case, that the policy cannot be so construed. To require the insurer to defend, under the circumstances of the present case, would put both the insurer and the insured in the untenable position of attempting to cooperate in the conduct of the litigation when their interests were, in fact, adverse. See, *e.g.*, *Williams v. Farmers Mutual of Enumclaw, supra.* If the insurer were to proceed to undertake the defense of its insured under these circumstances, it could not be allowed to prove facts contrary to the interests of the insured, yet

by participating in the action, it would be estopped from re-litigating the same questions in a subsequent action. Thus, it must be concluded that the insurer's obligation to defend is relieved where, as here, it is faced with an unresolved conflict of interest to that of its insured.

Thus, as Glens Falls could not reasonably be required to defend the action under the circumstances with which it was faced here, it could pursue one of three alternatives: (1) refuse to defend and disclaim liability (as it, in fact, did), (2) defend the action against the insured under a non-waiver agreement, or (3) obtain a preliminary resolution of the conflict by instituting an action for a declaratory judgment in regard to coverage under the Uniform Declaratory Judgment Act, Maryland Code, Article 31A.

In regard to the second alternative, although it does not appear in the record, Glens Falls stated in its brief and at argument, which was conceded by American, that the insurer, Glens Falls, had attempted to obtain a non-waiver agreement from the administrator of Mr. Jordan's estate, but that the administrator had refused to sign the proposed non-waiver agreement upon instruction from counsel for American, as we may assume he had the right to do.

The third alternative, seeking declaratory relief in regard to coverage, would seem to provide the best solution. However, it must be kept in mind that the seeking of this type of relief is entirely permissive and not mandatory. See Code (1957), Article 31A, § 2, and also that this remedy is *equally* available to the insured. Under these circumstances we may not say that there is a duty on the insurer *alone* to seek declaratory relief as to the question of coverage, and no estoppel may be raised on account of its failure so to do.

We believe that Glens Falls, in following the first course of conduct, acted within its rights, and is not now estopped by the People's Court judgment to raise its defense of non-coverage by reason of an intentional, non-accidental act by the insured, and the trial court erred in

holding to the contrary. However, by following this course of conduct, rather than the second or third, as already suggested, Glens Falls acts at its peril and if such defense is found to be lacking, then for puposes of liability, it is bound by the judgment of the People's Court against its insured.

> *Judgment reversed, and case remanded for further proceedings in accordance with this opinion, the costs to be paid by the appellee.*