573 P.2d 506

**GRANITE STATE INSURANCE CORPORATION, a corporation, Appellant,**

v.

**The MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, a Colorado Corporation, Appellee.**

**No. 1 CA–CIV 3129.**

Court of Appeals of Arizona,
Division 1,
Department A.

Oct. 25, 1977.

Rehearing Denied Dec. 7, 1977.

Review Denied Jan. 10, 1978.

O'Connor, Cavanagh, Anderson, West-
over, Killingsworth & Beshears, P. C., by
James H. O'Connor, Henry L. Timmerman,
Phoenix, for appellant.

Fennemore, Craig, von Ammon & Udall,
P. C., by Philip E. von Ammon, Toni S.
McClory, Phoenix, for appellee.

OPINION

DONOFRIO, Judge.

This is an appeal from an order of the Superior Court granting a motion for summary judgment in favor of appellee, The Mountain States Telephone and Telegraph Company (Mountain Bell), and against appellant Granite State Insurance Corporation (Granite State).

The matters in connection with this appeal arise from a declaratory judgment action brought by Mountain Bell against Granite State to interpret the terms of an insurance policy. The complaint alleges a breach by Granite State of its contractual obligation to defend by wrongfully refusing to undertake the defense of Mountain Bell to an action brought against it by Margaret Andreason an employee of Arizona Building Maintenance Corporation to collect damages for injuries she allegedly suffered when she fell over a protruding pipe on Mountain Bell's parking lot while performing custodial duties at Mountain Bell's building. Mountain Bell's action alleged Andreason's employer was an independent contractor designated by Mountain Bell to perform maintenance and custodial services at Mountain Bell's building and that the accident is covered under the terms of a policy with Granite State. It also alleges that Granite State's refusal to defend the damage action has caused it to incur attorney's fees in connection with the damage action for which they seek payment.

■ The first question raised which we shall consider is whether there is a genuine issue of material fact which precludes the issuance of summary judgment as a matter of law. Such a judgment should not be granted if upon examination of the record it is determined that there is a disputed fact which, if true, could affect the final judgment. *Colby v. Bank of Douglas*, 91 Ariz. 85, 370 P.2d 56 (1962); 16 A.R.S., Rules of Civil Procedure, Rule 56. In this connection the record must be viewed in the light most favorable to the party opposing the motion for summary judgment and summary judgment should not be granted where there is

the slightest doubt as to the facts. *Lujan v. MacMurtrie*, 94 Ariz. 273, 383 P.2d 187 (1963); *Lawless v. Ennis*, 3 Ariz.App. 451, 415 P.2d 465 (1966); *Tiffany Inc. v. W.M.K. Transit Mix, Inc.*, 16 Ariz.App. 415, 493 P.2d 1220 (1972).

■ Both parties agree that the record is devoid of any evidence as to what Andreason was doing, if anything, with reference to her work at the time she fell over the protruding pipe in the parking area. In view of the posture of this case, and the manner in which the issues were raised, particularly with reference to the exclusion provisions of the policy, which will be hereinafter discussed, we cannot say as a matter of law that it clearly appears that there are no genuine material triable issues of fact present. Not knowing anything of what the fact situation really is, we can assume that there could arise a conflict in the evidence as to certain facts, the determination of which could have a lot to do with respect to the legal effect of Andreason's actions in reference to the terms of the policy. We believe in such a situation the granting of summary judgment at this stage would result in depriving the parties of a full hearing on the issue involving exclusion provisions and we therefore reverse on this point.

Because of their importance in the event of trial, we next consider the merits of certain legal issues raised upon the facts of record over which there is no dispute.

On the question of the insurer's duty to defend, it is conceded that appellee had timely notified appellant of Andreason's claim against appellee and that appellant's refusal to defend the law suit has forced appellee to retain attorneys and incur certain legal expenses in connection therewith. The policy terms are clear that the insurance company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages for bodily injury to which the policy applies. The policy also provides that the company shall have the right and duty to defend any suit against the insured, even if any of the obligations of the suit are groundless, false or fraudulent.

■ We believe that the questions raised on this issue are answered by our Supreme Court in *Kepner v. Western Fire Insurance Co.*, 109 Ariz. 329, 509 P.2d 222 (1973). To begin, an insurer's duty to defend a policyholder is not absolute and will depend upon the actual facts rather than upon the allegations of the complaint filed by a third party against the policyholder.

In *Kepner*, which involved a homeowner's policy but which reasoning is applicable to the facts of this case, our Supreme Court on this point said:

"The decisions concerning when it is the duty of an insurer to defend have been collated in an extensive annotation in 50 A.L.R.2d 458 (1956), 'Allegations in third person's action against insured as determining liability insurer's duty to defend.' Concededly, the determination of whether to defend is frequently a difficult decision for the insurer, but as a generality it may be said, as the annotator states:

'If the complaint in the action brought against the insured upon its face alleges facts which come within the coverage of the liability policy, the insurer is obligated to assume the defense of the action, but if the alleged facts fail to bring the case within the policy coverage, the insurer is free of such obligation.' 50 A.L.R.2d at 464 (footnotes omitted).

The Arizona cases support the foregoing general statement. See, *Cagle v. Home Ins. Co.*, 14 Ariz.App. 360, 483 P.2d 592 (1971); *Tucson Public School Dist. No. One v. Home Insurance Co.*, 9 Ariz.App. 233, 451 P.2d 46 (1969); *Lawrence v. Burke*, 6 Ariz.App. 228, 431 P.2d 302 (1967); *Paulin v. Fireman's Fund Ins. Co.*, 1 Ariz.App. 408, 403 P.2d 555 (1965). Many distinctions have been drawn, some dependent upon the language of the various policies' provisions and some upon the facts of the particular case. The distinction here is that the alleged facts ostensibly bring the case within the policy coverage but other facts which are not reflected in the complaint plainly take the case outside the policy coverage. We hold that in this situation there is no absolute duty to defend for these reasons:

First, under modern practices, such as the Federal Rules of Civil Procedure, followed in Arizona, the complaint serves a notice function and is framed before discovery proceedings crystalize the facts of the case. The trial focuses on the facts as they exist rather than on facts which might exist under the theory of recovery in the complaint. Accordingly, the duty to defend should focus upon the facts rather than upon the allegations of the complaint which may or may not control the ultimate determination of liability. See, e. g., *United States Fidelity & Guar. Co. v. Baugh*, 146 Ind.App. 583, 257 N.E.2d 699 (1970).

Second, there are many cases, such as here, where the allegation of facts in the complaint, even if proved, will not be decisive as to the obligation of the insurer to pay the resulting judgment. The proof of negligence proximately causing Walter Kepner's injuries justifies a judgment favorable to him, but the fact that the insureds' policy excludes coverage is irrelevant and could not be shown at the trial. As the Supreme Court of Iowa said in the recent case of *New Hampshire Ins. Co. v. Christy*, Iowa, 200 N.W.2d 834, 838 (1972):

'The allegations in a pleading are not, in all circumstances and situations, the decisive factor in determining whether there exists a duty on the part of the insurance company to defend. This is especially true when the duty to defend depends upon a factual issue which will not be resolved by the trial of the third party's suit against the insured, the duty to defend may depend upon the actual facts and not upon the allegations in the pleading.'

In the instant case, the trial of the negligence action did not resolve the factual issue of whether the accident fell within the exclusionary clause of the policy; further litigation was required to fix the responsibility for payment of the judgment and would have been required even if the insurer had undertaken the defense.

Third, it is to be recognized there are cases where, if on the facts the insurer has reason to believe the policy does not cover the insured, the interests of the insured and insurer may diverge. Several recent cases recognize that the insurer should not then control the defense. *Glens Falls Ins. Co. v. American Oil Co.,* 254 Md. 120, 254 A.2d 658 (1969); *Burd v. Sussex Mutual Ins. Co.,* 56 N.J. 383, 267 A.2d 7 (1970)." 109 Ariz. at 331–332, 509 P.2d at 224.

Particularly apropos to our issue is the following language in *Kepner*:

"Where there are facts which might exclude coverage, the insurer cannot always defend with complete fidelity. There must be a proceeding at which the insurer and the insured are each represented by counsel of their own choice to fight out their differences. Such a testing of the insurer's liability may take the form of a declaratory judgment brought in advance of the third party's action or proceedings on garnishment following the trial of the third party's action as in the instant case. *Burd v. Sussex Mutual Ins. Co.,* supra. And see, Comment, 'The Insurer's Duty to Defend under a Liability Insurance Policy,' 114 U.Pa.L.Rev. 734 (1966). If the insurer refuses to defend and awaits the determination of its obligation in a subsequent proceeding, it acts at its peril, and if it guesses wrong it must bear the consequences of its breach of contract. *Comunale v. Traders & General Ins. Co.,* 50 Cal.2d 654, 328 P.2d 198 (1958); *Grieb v. Citizens Casualty Co.,* 33 Wis.2d 552, 558, 148 N.W.2d 103, 106 (1967)." 109 Ariz. at 332, 509 P.2d at 225.

■ Since the testing of the insurer's possible liability has taken the form of this declaratory judgment action which, because of this opinion, is not yet finalized, the issue regarding representation and attorney's fees now becomes moot. We are citing *Kepner* with approval insofar as it is applicable, particularly the rule that the insurer may refuse to defend when facts appear to exclude coverage. If insurer refuses to defend and awaits the determination of its obligation in a subsequent proceeding, it acts at its peril, and if it guesses wrong it must bear the consequences of its breach of contract.

■ Appellant argues that the policy is an owner's and contractor's protective liability coverage policy; that it insures appellee only on a limited basis, and that it was not intended to be a general comprehensive liability policy. Also, that Andreason was injured in the parking lot and that therefore her injury did not arise out of any janitorial type of work; and that the type of injury she received was not the type that the policy was designed to cover. Although we are inclined to agree with much of what appellant states we cannot agree that the mere fact alone that Andreason was injured in the parking lot by the protruding pipe absolves Granite State of any liability. For example, if Andreason went to the parking lot to get or put away supplies used in connection with her work we believe that the coverage provisions would apply the same as if she had been injured because of working conditions which existed while working in the building itself. See *Aetna Casualty & Surety Co. v. Ocean Accident & Guar. Corp.,* 386 F.2d 413 (3rd Cir. 1967); *Duke Power Co. v. Indemnity Ins. Co.,* 229 F.2d 588 (4th Cir. 1956); *Chesapeake & Potomac Tel. Co. v. Allegheny Const. Co.,* 340 F.Supp. 734 (D.Md.1972); *Liberty Mutual Ins. Co. v. Standard Accident Ins. Co.,* 164 F.Supp. 261 (S.D.N.Y.1958), aff'd, 264 F.2d 671 (2nd Cir. 1959); *United States Fidelity & Guar. Co. v. National Paving & Contracting Co.,* 228 Md. 40, 178 A.2d 872 (1962); See also *Retherford v. Kama,* 52 Haw. 91, 470 P.2d 517 (1960).

The policy at issue in *Chesapeake & Potomac Tel. Co.* which has similar wording to the policy herein provided coverage for:

"bodily injury * * * caused by accident and arising out of * * * operations performed for the named insured by independent contractors and general supervision thereof by the named insured, if the accident occurs in the course of such operations * * *."

The insurer in the case argued that the construction worker's injuries "arose out of" the rotted condition of a certain pole—i. e., the *phone company's* negligence—and not the operations of the independent contractor. In rejecting this argument the court refused to equate "arising out of" with proximate cause or to read any other restrictive qualifications into the plain language of the policy. All that was necessary, the court declared, was a minimal causal or "but for" relationship between the contractor's operations and the alleged accident. The fact that the phone company may have been the sole *legal* cause of the accident was held immaterial to the question of coverage under this provision of the policy.

Appellee's main contention is that Granite State is liable under the coverage provisions of the policy which read:

"The company [Granite State] will pay on behalf of the insured all sums which the insured [Mountain Bell] shall become legally obligated to pay as damages because of

Coverage A. bodily injury

\*　　\*　　\*　　\*　　\*　　\*

to which this policy applies, *caused by an occurrence and arising out of (1) operations performed for the named insured by the contractor* designated in the schedule at the location designated therein or (2) acts or omissions of supervision of such operations　\*　\*　\*." (Emphasis Supplied)

Its position is that Andreason's claim falls within this provision in that the Arizona Building Maintenance Corporation, Andreason's employer, was a contractor designated to perform operations for the insured appellee at the location covered under the policy, and that it was in the course of these operations that Andreason's accident occurred and that her injuries "arose out of" operations performed for appellee. We would agree except that the following (completed operations) exclusion is equally a part of the policy and if the facts also show that Andreason's claim comes within the exclusionary provision hereinafter set forth then the exclusion would control and the claim would be excluded:

"Exclusions

*This policy does not apply:*

\*　　\*　　\*　　\*　　\*　　\*

(b) to bodily injury or property damage occurring after

(1) *all work on the project (other than service, maintenance or repairs)* to be performed by or on behalf of the named insured at the site of the covered operations *has been completed* or　\*　\*　\*." (Emphasis Supplied)

Since there are no facts or evidence, as yet, of record with respect to whether or not the contractor's work had been completed, we do not pass upon whether any of the requirements of this exclusion has been established in this case.

As appellant has stated in its brief, Andreason's complaint which is in the United States District Court only indicates that the accident occurred while she was exiting the Mountain Bell building. This alone does not answer any of our questions particularly the crucial question as to whether the work had been completed at the time.

■ It is conceded that the janitorial work by the independent contractor is covered by the policy. In interpreting the above-quoted exclusion, we are governed by the rule that words are to be given their ordinary meaning unless it appears from context or otherwise that a different sense was intended. Also, words and phrases which have acquired a peculiar and appropriate meaning in the law shall be construed according to such peculiar and appropriate meaning. Applying these rules we believe that janitorial work, although considered ongoing in one respect, is also work that can be completed each day, and that it comes within the wording of the exclusion "all work on the project." As such it certainly is work on the project covered by contract with the independent contractor.

In determining the meaning of the words which follow in parenthesis "(other than

service, maintenance or repairs)" we must consider the following definitional section of the policy:

> "*Operations which may require further service or maintenance work*, or correction, repair or replacement because of any defect or deficiency, *but which are otherwise complete shall be deemed completed.*" (Emphasis Supplied)

This definition which cannot be disregarded ties in with the last words of section (b)(1) of the exclusion which read "has been completed" as it further defines the meaning of these words. The definition simply tells us that operations which may require further service or maintenance work because of any defect or deficiency but which are otherwise complete shall be deemed completed within the meaning of the policy. We have found no reason to eliminate janitorial work from the exclusion and definitional sections, nor have we found anything in the policy which would limit or prevent janitorial work of a building, although an ongoing type of work, from being completed each time it is performed.

▇ Applied to this case, we read the definition to say that if the maintenance (janitorial-custodial) work is completed for the day and thereafter it becomes necessary to come back to correct some deficiency in the work that it still would be considered completed as when the worker first left the job. We therefore hold that the exclusionary section previously quoted clearly applies to continuous maintenance type operations such as the custodial or janitorial work which is performed each day.

Here again we say that inasmuch as the record is devoid of undisputed facts as to what Andreason was doing at the time of her injury, we cannot determine as a matter of law whether she, as the employee of the independent contractor, incurred her bodily injury after "all the work on the project (other than service, maintenance or repairs) to be performed" for the insured "had been completed." We can say, however, that if the facts show that the contractor had completed the janitorial work and that Andreason was already on her way home that the matter would then come within the exclusion and that there would be no liability under the policy because of the exclusion. We wish to make it clear, however, that we do not pass upon such questions that would arise in situations, for instance, if Andreason had negligently performed her maintenance work, and thereafter as a result of that negligent work, someone was injured.

With reference to exclusion (b)(2) (which follows (b)(1), supra), we are unable to see its application to the facts of this case, particularly where the injury would have to arise out of the contractor's work to be applicable. However, because of the posture of this case, we do not pass upon the applicability of this section.

Also, with reference to coverage I(A)(2) that provides that the company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay because of bodily injury caused by an occurrence and arising out of acts or omissions of the insured in connection with its general supervision of the operations, and exclusion (c),[1] the complementary exclusionary provision, we feel because of the contradictions[2] in the interrogatories and the affidavit of appellees building supervisor that there is a genuine issue of fact with respect

---

1. "Exclusions

   This policy does not apply:

   \*   \*   \*   \*   \*   \*

   (c) to bodily injury \* \* \* arising out of any act or omission of the named insured or any of his employees, other than general supervision of work performed for the named insured by the designated contractor."

2. Appellant's brief sets forth that interrogatory number 21 and the answer thereto reads:

"Did anyone from the defendant's company (Mountain Bell) supervise plaintiff's (Mrs. Andreason) work on June 11, 1972? No.
If so state:
Plaintiff was supposed to be supervised by her employer Arizona Maintenance against whom she has instituted and recovered on industrial."
In the instrument captioned Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment, appellee presents an affidavit from its building supervisor which is contradictory to the answer in the above interrogatory.

to the nature of any general supervision exercised by appellee which may exist and for that reason we do not pass upon this issue.

For the reasons stated, we find the court erred in granting the motion for summary judgment.

Reversed and remanded.

NELSON, P. J., and OGG, J., concur.