658 P.2d 235

### The MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, Plaintiff-Appellant,

v.

### GRANITE STATE INSURANCE CORPORATION, a corporation, Defendant-Appellee.

1 CA–CIV 5451.

Court of Appeals of Arizona, Division 1, Department D.

Nov. 9, 1982.

Rehearing Denied Jan. 11, 1983.

Review Denied Feb. 9, 1983.

Fennemore, Craig, von Ammon, Udall & Powers by George T. Cole, Phoenix, for plaintiff-appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Henry L. Timmerman, Scott A. Salmon, Phoenix, for defendant-appellee.

### OPINION

MEYERSON, Judge.

This case has come before this court previously. *Granite State Insurance Corp. v. Mountain States Telephone and Telegraph Co.,* 117 Ariz. 432, 573 P.2d 506 (Ct.App. 1977) (*Granite State I*). The present appeal is from an order of the trial court granting a motion for summary judgment in favor of Granite State Insurance Corporation (Granite State) and against The Mountain States Telephone and Telegraph Company (Mountain Bell).

On June 11, 1972, Margaret Andreason was taking a floor buffer out to her car from Mountain Bell building 70 when she fell over a protruding pipe in the parking area. Andreason, an employee of Arizona Building Maintenance Corporation, was responsible for performing janitorial services at building 70 and at two other Mountain Bell buildings (69 and 71) located in the Mesa area. Andreason used the floor buffer in building 70 that night and was taking the buffer out to her car to transport it to another building to use later that evening.

When Andreason subsequently sued Mountain Bell for the injuries she suffered, Mountain Bell tendered the defense to Granite State pursuant to an insurance policy which Granite State had previously issued to Mountain Bell. Granite State denied coverage and Mountain Bell brought suit.

In *Granite State I,* this court found that the trial court erred in granting Mountain Bell's motion for summary judgment. We held, among other things, that the record lacked sufficient facts to determine whether exclusion (b)(1) in the insurance policy was applicable. The record did not contain evidence of what Andreason was doing, if anything, with reference to her janitorial work at the building when she fell. This court did not pass upon exclusion (b)(2).

After this case was remanded to the trial court and Andreason's deposition was taken, Mountain Bell and Granite State each moved for summary judgment. The trial court granted Granite State's motion for summary judgment, implicitly holding that either exclusion (b)(1) or (b)(2) of the policy precluded coverage. Mountain Bell appealed. We hold that neither exclusion (b)(1) nor (b)(2) precludes coverage and reverse the judgment of the trial court.

Exclusion (b)(1) states that:

This policy does not apply ... (b) to bodily injury or property damage occurring after (1) all work on the project (other than service, maintenance or repairs) to be performed by or on behalf of the named insured at the site of the covered operations has been completed ....

Granite State insists that exclusion (b)(1) is applicable, contending that Andreason was done with her janitorial work at building 70 when she was injured. Mountain Bell, while conceding that Andreason had completed her janitorial chores inside the building when she was injured, argues that Andreason had not completed all her work at the site of the covered operations.

■ Although Mountain Bell puts forth several theories to support its argument that Andreason had not completed her work when she was injured and that exclusion (b)(1) is inapplicable, we need discuss only that contention which we adopt. Mountain Bell contends that Andreason was still working when she took the buffer out to her car. While "work" is not defined in the policy, in our view, the term includes the carrying in and out of supplies used on the job site. Even if Granite State could reasonably maintain otherwise, any ambiguity in an insurance policy, especially in an exclusionary clause, is construed against the insurer. *State Farm Mutual Automobile Insurance Co. v. Paynter,* 122 Ariz. 198, 593 P.2d 948 (Ct.App.1979).

Our conclusion that the carrying out of a floor buffer used on the job site is "work" is supported by the following language in *Granite State I,* wherein this court stated:

[I]f Andreason went to the parking lot to get or put away supplies used in connection with her work we believe that the coverage provisions would apply the same as if she had been injured because of working conditions which existed while working in the building itself.

117 Ariz. at 436, 573 P.2d at 510. While this statement is addressed to coverage provisions and not to exclusion (b)(1), it does speak directly to the carrying in or out of supplies such as a floor buffer, and rejects any significant distinction between work inside the building itself and work facilitating the inside cleaning. Thus, because Andreason's "work" included the carrying out of a floor buffer to her car, the work had not been completed and exclusion (b)(1) cannot preclude coverage in this case. The policy's definition of the term "completion"

does not contradict our conclusion that work is not completed until supplies or equipment are put away. *See Southern Guaranty Ins. Co. v. Scott*, 289 Ala. 159, 266 So.2d 602 (Ala.Sup.Ct.1972) (completed operations exclusion did not preclude coverage for injury occurring when liquid fertilizer was being transferred to applicator before being sprayed on field). .

Granite State argues that the exclusion should apply because the injury would not have occurred if Mountain Bell provided a buffer for Andreason at each building to be cleaned. But the Building Service Contractor's Agreement expressly provided that Arizona Building Maintenance Corporation (Andreason's employer) was to provide "all cleaning equipment, such as . . . buffers . . . ." Thus, Andreason's work "could not be carried out," *Duke Power Co. v. Indemnity Ins. Co.*, 229 F.2d 588, 591 (4th Cir. 1956), without transporting the buffer to each building for use and back to her car.[1]

The cases relied upon by Granite State do not support its contention that the work had been completed. An exclusion somewhat similar to (b)(1) was the subject of litigation in *Spatz v. Aetna Casualty and Surety Co.*, 36 Misc.2d 950, 237 N.Y.S.2d 133 (1962). But in *Spatz* the work was performed by the employee who then *left the premises,* reporting to his employer two days later that he completed the work. In *Pan American Ins. Co. v. Cooper Butane Co.*, 157 Tex. 102, 300 S.W.2d 651 (Tex.Sup. Ct.1957) the accident took place four days after the work performed was completed. We find that there is a clear distinction between a situation where an accident occurs after an employee has left the job site and the present case of an employee who is injured while putting away supplies necessary for completion of the job. Ms. Andreason's deposition testimony that work inside building 70 was completed is, of course, not binding upon our judicial declaration of the meaning of the policy terms.

■ Granite State also argues that exclusion (b)(2) precludes coverage. Exclusion (b)(2) states:

This policy does not apply . . . (b) to bodily injury or property damage occurring after . . . (2) that portion of the designated contractor's work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Granite State argues that Andreason's work was put to its intended use because she had completed her cleaning and the public could now use the hallways and bathrooms. However, Granite State ignores the plain language of exclusion (b)(2) which requires that the "portion of the designated contractor's work *out of which the injury or damage arises* " must be put to its intended use (emphasis added). In this case, Andreason's injuries did not stem from the mopped floors or the cleaned bathrooms, but rather from a fall in the parking lot. If someone fell in a hallway which had been cleaned and opened up for normal traffic, then perhaps exclusion (b)(2) might be applicable. However, those facts are not before this court. As was stated in *Granite State I:*

With reference to exclusion (b)(2) . . . we are unable to see its application to the facts of this case, particularly where the injury would have to arise out of the contractor's work to be applicable.

117 Ariz. at 438, 573 P.2d at 512.

The cases cited by Granite State do nothing to make exclusion (b)(2) applicable to this case. For example, in *Casey v. Employers National Insurance Co.*, 538 S.W.2d 181 (Tex.Ct.App.1976), a building project was only 75% completed, when a water pipe broke in an area of the building that had already been accepted and occupied. The court held that the "put to its intended use" exclusion was applicable because the damaged portion of the building had been accepted and occupied. Furthermore, the item which caused the damage (the water pipe) was the same item which had been

1. Andreason's practice of leaving the buffer in one of the three buildings does not bear upon

our conclusion that carrying it from a building to her car was a necessary part of her job.

put to its intended use. Andreason's injuries did not arise from those items of her work which Granite State says were put to their intended use—hallways and bathrooms. Hence, exclusion (b)(2) has no applicability and cannot preclude coverage for Mountain Bell under its policy with Granite State.

For the reasons stated, we find the trial court erred in granting the motion for summary judgment.

Reversed and remanded.

HAIRE and EUBANK, JJ., concur.